UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ERIC OLLISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 1077 |
| | ) | |
| v. | ) | Judge James E. Shadid |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | Magistrate Judge Jonathan E. Hawley |
| et. al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO VOLUNTARILY DISMISS WITHOUT PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)**

NOW COMES Plaintiff, ERIC OLLISON, by and through his attorney Irene K. Dymkar, and submits this brief and memorandum in support of his Motion to Voluntarily Dismiss Without Prejudice, Pursuant to Federal Rule of Civil Procedure 41(a)(2), stating as follows:

**STANDARD OF REVIEW**

Pursuant to Rule 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper". Fed. R. Civ. P. 41(a)(2). In addition, it is well-settled case that "a defendant must demonstrate *plain legal prejudice* in order to prevent a voluntary dismissal of the claim against him by a plaintiff." It has been held that "a showing of injury in fact, such as *the prospect of a second lawsuit or the creation of a tactical advantage, is insufficient* to justify denying the plaintiff's motion to dismiss." *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1233 (7th Cir. 1983) (emphasis added).

The most obvious example of "plain legal prejudice" is the dismissal stripping a defendant of an "absolute defense." *Grismore v. Bayer Corp. (In re Yasmin & Yaz*

*(Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.),* 2011 U.S. Dist. LEXIS 146987, *5 (S.D. Ill. Dec. 21, 2011). Additional elements that courts have considered in interpreting "plain legal prejudice" include considering "the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant." *Kovalic v. DEC International, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988) (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969)); *Cumulus Radio Corp. v. Olson*, No. 15-cv-1067, 2015 U.S. Dist. LEXIS 30745, at *8-9 (C.D. Ill. Mar. 13, 2015).

All factors weigh in favor of granting Plaintiff's motion for a voluntary dismissal.

## **FACTUAL CONSIDERATIONS**

The timeline for this motion starts during Plaintiff's incarceration at Illinois River Correctional Center. On December 22, 2013, December 26, 2013, and January 8, 2014, Plaintiff complained about severe medical issues and requested aid for his medical problems. See Exhibit A. Plaintiff believed that the medical staff were being deliberately indifferent to his medical condition, and asked for elevated care. Id. Within the sixty days required by the Illinois Administrative Code, he filed a grievance and appealed that grievance to the Grievance Officer. See 20 Ill. Adm. Code 504.810. With regard to Grievance #13-1071, the Grievance Officer responded on January 3, 2014, and the Chief Administrator Officer also responded on that same date. See Exhibit A. According to the Illinois Administrative Code, Plaintiff had to appeal the Grievance Officer's response within thirty days of the decision, or by February 3, 2014, to the Administrative Review Board  See 20 Ill. Adm. Code 504.850.

However, Plaintiff's medical condition became suddenly so severe that on January 16, 2014, he was transported to Graham Hospital, then St. Francis Hospital, collapsing into a coma because of acute renal failure.  Upon obtaining medical care at an outside hospital, Plaintiff's need for an administrative remedy from the prison ceased since he received the relief he needed by being treated by physicians, including specialists, outside of the prison. Moreover, the irreversible damage to his brain, kidneys, and other body parts, was done at that point, and no amount of grieving after his acute renal failure, even if he were physically capable to complete further paperwork, would have made any difference.

While at St. Francis Hospital, Plaintiff was in a coma for weeks. An MRI of his head on January 27, 2014, showed bilateral cerebral cortical laminar necrosis, and a CT of his head on February 11, 2014, showed progression to a bilateral parietal infarction.  On February 25, 2014, Plaintiff was transported to RLM Specialty Hospital, where he had to undergo intense rehabilitation. On March 20, 2014, Plaintiff was transported to University of Illinois at Chicago (UIC) and remained there until April 3, 2014.  During the time in these three hospitals, Plaintiff was severely restricted in terms of mental and physical abilities and was confined medically past the deadline for his appeal to the Administrative Review Board.

Upon his release from UIC on April 3, 2014, Plaintiff was transferred to Graham Correctional Center (not Illinois River Correctional Center).  Plaintiff remained in the custody of the Illinois Department of Corrections (IDOC) until October 17, 2014, whereupon he was transferred to the custody of the Federal Bureau of Prisons.  Plaintiff remained in federal custody until April 8, 2016, when Plaintiff was released totally from prison custody.

Plaintiff filed his initial Complaint in this action while he was still in the custody of the Federal Bureau of Prisons on January 15, 2016, in the Northern District of Illinois (Dkt #1).

Over Plaintiff's strong objection and after the Court dismissed certain Defendants that caused the Northern District to relinquish jurisdiction, Plaintiff's case was transferred to the Central District of Illinois on February 15, 2017 (Dkt # 144). Plaintiff had filed a Motion to Reconsider Dismissal and Transfer (Dkt. # 139), but that had been denied (Dkt. # 143).

Plaintiff's counsel was not even admitted in the Central District before her involvement in this case. Being an active leader in a plaintiff attorneys' civil rights organization in Chicago, she tried diligently to find a Chicago civil rights attorney through her professional network to either take over this meritorious case or at least assist her with this case, to no avail. All attorneys she contacted said they were either overextended or were extremely reluctant to take responsibility for a complicated case that required travel from Chicago. Ms. Dymkar was admitted in the Central District on November 23, 2015. She hired a young associate out of law school, Daniel Regenscheit, who also became admitted in the Central District; however, he left for employment with the Illinois State Defender's Office in March 2018, leaving Plaintiff's counsel without his assistance.

Plaintiff's counsel informed the Magistrate Judge in a telephonic motion hearing on September 4, 2018, that she was actively seeking the assistance of another attorney. An experienced Chicago attorney, James L. Bowers, agreed to become admitted in the Central District, file an appearance, and begin working on this case in December 2018. However, unfortunately, he was admitted into a hospital through the emergency room in early January 2019, for an unexpected, life-threatening condition. Surgery was immediately performed and unforeseen complications arose during surgery. While the emergency aspect to Mr. Bowers' condition are past and his prognosis is good, his recovery and rehabilitation period is protracted.

Written discovery has been propounded and thousands of pages of documents have been exchanged (almost 3500 pages of documents from Plaintiff to Defendants), but no depositions have been taken. None of the parties have filed any dispositive motions. Plaintiff has suggested a deposition schedule well in advance of the dates, to accommodate the parties' and attorneys' schedules and to allow Plaintiff's counsel to travel and stay in the Springfield/Peoria area for the depositions. See Exhibit B.

Plaintiff's counsel moved for an extension of time to complete discovery in September 2018 (Dkt.# 160), setting forth her trial and appellate litigation schedule (Dkt. # 160). In greater detail, that schedule has been as follows:

April 30, 2018, to May 30, 2018 – The trial of *Davis v. City of Chicago*, 15 L 4799 (Circuit Court of Cook County), a police shooting death case involving multiple experts, several eye-witnesses, and 50 potential police witnesses. After 4-1/2 weeks of trial, a mistrial was declared because of a deadlocked jury.

July 16, 2018 - July 25, 2019 – The trial of *Wilbon, et al. v. Plovanich, et al.*, 12 C 1132, Northern District of Illinois, a Section 1983 case involving three plaintiffs, seven defendants, and nineteen non-party witnesses. The jury found for plaintiffs. The fee petition was filed October 20, 2018, and the reply was filed January 3, 2019. There are 576 docket entries and 1450 billing items on the timesheet for just the lead attorney, Ms. Dymkar, alone, going back almost 7 years, all of which had to be reviewed and redacted.

September 18, 2018 - September 21, 2018 – The trial of *Bonner v. O'Toole*, 12 C 981, Northern District of Illinois, an illegal search case with complications, involving ten witnesses, including several medical professionals. Three deposition transcripts had to be redacted by the parties for reading at trial. The pre-trial order and motions *in limine* were filed September 4, 2018. The pre-trial conference held September 6, 2018. The jury found for plaintiff. The fee petition was filed January 31, 2019, and the reply is due March 8, 2019. There are 513 docket entries and 1427 billing items on the timesheet for

just the lead attorney, Ms. Dymkar, alone, going back almost 8 years, all of which had to be reviewed and redacted.

November 13, 2018 – The trial date for *Teague, et al. v. Miehle*, 14 C 6950, Northern District of Illinois, a case involving six plaintiffs, eleven defendants, and eight non-party witnesses. Motions *in limine* and responses thereto were filed on August 17, 2018, and August 31, 2018, respectively. The proposed pre-trial order was filed on September 15, 2018. The pre-trial conference was October 19, 2018. There were intensive eleventh hour settlement negotiations. The case settled with offer of judgment on the eve of trial. The fee petition was filed January 21, 2019, and the reply was filed February 4, 2019. There are 237 docket entries and 834 billing items on the timesheet for just the lead attorney, Ms. Dymkar, alone, going back 5 years, all of which had to be reviewed and redacted.

January 7, 2019 – The trial date for *Smith v. Alaniz,* 14 C 4359*,* Northern District of Illinois, an excessive force and false arrest case involving multiple witnesses. Plaintiff's counsel attended two pre-trial conferences and was preparing intensely for this trial up until the Court continued the trial a few days before its commencement because of the looming federal government shut-down, which impeded resolution of a bankruptcy issue and which could have interrupted the trial before its completion.

February 19, 2019, to March 21, 2019 – The re-trial of the *Davis v. City of Chicago*, 15 L 4799, police shooting case first tried in May 2018. The preparation is intense. The trial is likely to last 4-1/2 weeks again.

Appeal – *Edwards, et al. v. Joliff-Blake, et al.*, 18-1848, Seventh Circuit Court of Appeals. Opening brief was filed January 3, 2018. Reply brief was filed August 1, 2018. On August 27, 2018, the City of Chicago filed a letter of Supplemental Authority, to which a response was filed. Oral argument was held on September 5, 2018.

Appeal – *Torry, et al. v. City of Chicago*, 18-1935, Seventh Circuit Court of Appeals. Opening brief was filed November 30, 2018. Reply brief is due March 3, 2018.

Motion for Summary Judgment – Plaintiff's counsel also prepared response briefs to two summary judgment motions in the case of *Wade, et al. v. Ramos, et al.*, 16 C 9022, Northern District of Illinois, on October 23, 2018, and on November 1, 2018 (*Monell* claim).

To allow more flexibility in scheduling, the Magistrate Judge suggested a consent to jurisdiction of the Magistrate Judge for all purposes in this case, an idea which Plaintiff's attorney embraced, but defense counsel did not. Therefore, the trial schedule remains unchanged and Plaintiff's counsel will meet that schedule by all available means.

The purpose of this motion, as explained below, is to escape the severe constraints mandated by the Prison Litigation Reform Act. Based on the circumstances alleged above and the fact that there would be little consequence to the substantive rights in this case, Plaintiff is asking the Court to voluntarily dismiss this case without prejudice to refile.

## ARGUMENT

I. **Plaintiff is filing his motion to dismiss to escape limitations imposed by the Prison Litigation Reform Act, which would not preclude Defendants from asserting any absolute defenses.**

According to the Prison Litigation Reform Act (PLRA), "no Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury (as defined in section 2246 of title 18, United States Code). 42 U.S.C. § 1997e(e). This action was filed while Plaintiff was incarcerated and thus he is subject to the PLRA, which includes several limitations. For example, "'a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant.'" *Farella v. Hockaday*, 304 F. Supp. 2d 1076, 1079 (C.D. Ill. 2004), quoting the PLRA. Also, Plaintiff's counsel's

ability to collect attorneys' fees is restricted in that her hourly rate is capped and she can only claim a total fee award of 150% of Plaintiff's judgment. However, if Plaintiff were re-file his action now as a free man, the PLRA would not apply to his suit. *Hunter v. Sood*, No. 13-CV-2569, 2015 WL 3631636, at *2 (N.D. Ill. June 10, 2015).

Based on the above described limitations, Plaintiff's bargaining position for settlement is weaker and he would not be fairly compensated for all of his claims because of the PLRA. Under the PLRA, Plaintiff's judgment would be diminished since the Court must take a portion of his judgment to pay his counsel's attorney fees. As of right now, his attorney's ability to obtain attorney's fees would be severely limited. These limitations prevent Plaintiff's attorney from obtaining a larger settlement on Plaintiff's behalf. Nevertheless, the benefits to Plaintiff from being out from under the PLRA do not equate to "plain legal prejudice" to Defendants. *Quad/Graphics, Inc.*, 724 F.2d 1230, 1233; *see Riggs v. Sonney*, No. 1:13-CV-9291, 2017 U.S. Dist. LEXIS 106182, at *8 (N.D. Ill. July 10, 2017): "Plaintiff has provided a sufficient explanation for the need for dismissal: now that he is no longer incarcerated, he would like to file a claim, like all other non-incarcerated individuals, without the constraints of the PLRA." See Exhibit C (copy of *Riggs* opinion).

The dismissal of Plaintiff's Complaint and the refiling of the Complaint would in no way strip the "defendant of an absolute defense" that would equate to "plain legal prejudice." *Grismore v. Bayer Corp. (In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*), 2011 U.S. Dist. LEXIS 146987, *5 (S.D. Ill. Dec. 21, 2011). The only defense that Defendants could try to allege is that Plaintiff did not properly exhaust his administrative remedies. However, this defense is inapplicable to Plaintiff's case because the administrative remedies applicable to Plaintiff's medical case were no longer "available" to him upon his entry

to a hospital, and were no longer "available" to him given his seriously compromised medical condition. 42 U.S.C.S. § 1997e(a).

As stated above, Plaintiff properly filed several grievances and properly appealed those grievances within the time frame mandated by the Illinois Administrative Code regarding the inadequate medical care he was receiving. Exhibit A, 20 Ill. Adm. Code 504.810. The last step that he needed to complete on one of the grievances, # 13-1071, was the appeal to the Administrative Review Board, which needed to be completed within thirty days of the January 3, 2014, decision by the Chief Administrative Officer or by February 3, 2014. 20 Ill. Adm. Code 504.850. However, Plaintiff was admitted to St Francis Hospital on January 16, 2014, which was during the thirty-day time frame for his appeal to the Administrative Review Board. It was at that point, when Plaintiff was admitted to the hospital, that he was finally receiving the adequate medical care necessary for his condition, albeit belatedly, making his need to appeal to the Administrative Review Board superfluous. The only thing left for him to obtain was monetary compensation for his injury, which is not a remedy afforded under the grievance process. As stated by the Seventh Circuit: "If the injury has healed by the time suit begins, nothing other than damages could be a 'remedy,' and if the administrative process cannot provide compensation then there is no administrative remedy to exhaust." *White v. Bukowski*, 800 F.3d 392, 395 (7th Cir. 2015).

Even if this Court were to find that it was incumbent upon Plaintiff to exhaust his remedies, Plaintiff was prevented from doing so because he was severely incapacitated. Plaintiff was in three different hospitals from January 16, 2014 to April 3, 2014 (a period of over thirty days). During that time, Plaintiff was either in a coma or severely incapacitated to the point that he was unable to walk, talk, or write, not to mention cognitively diminished. Case law is clear

that if the ability to exhaust is prevented because a person is physically unable to pursue exhaustion, then a remedy is not available within the meaning of the PLRA. (*see, e.g. Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011)). And since the Illinois Administrative Code is silent to inform inmates when or how to exhaust when confined to multiple hospitals past the deadline to appeal to the Administrative Review Board, case law is clear that "a remedy is not available if the essential elements of the procedure for obtaining it are concealed." *Lanaghan v. Koch*, 902 F.3d 683, 690 (7th Cir. 2018). In other words, because Plaintiff was unaware of how to properly exhaust in his medical confinement, and was unable to do so, he should not be forced to comply with the exhaustion requirement of appealing to the Administrative Review Board. Finally, of note, Defendants have failed to request a *Pavey* hearing to address a potential issue of exhaustion or moved for summary judgment on this issue since the pendency of this case. *See Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

## II.    Plaintiff has been diligent in the litigation of his case and has not excessively delayed.

Plaintiff's counsel has been diligent with the litigation of his case considering the trial and appellate litigation schedule she has had, as described above, as well as the fact that she has been unable to enlist co-counsel. The experienced attorney who finally agreed to become admitted in the Central District and file an appearance in this case has been medically compromised since early January of 2019.

Plaintiff's counsel informed Magistrate Judge Hawley during the motion hearing for the parties on September 4, 2018 that her trial schedule was making it extremely difficult to prosecute her case. (Dkt. # 161). However, Plaintiff must stress that he is not asking for the voluntary dismissal to get out of his obligations concerning discovery and preparing for trial. In

fact, Plaintiff has issued a suggested deposition schedule with the goal of completing all of his party depositions by the Court's deadline (see Exhibit B).

### III. Defendants have exerted minimal effort and incurred minimal expense in this case, and have not filed any Motions for Summary Judgment.

Defendants have not filed a Motion for Summary Judgment. Defendants have exerted minimal effort and incurred minimal expense in this case. There have been no depositions taken, and Defendants have not sent any notices of depositions. Although this case has been pending for the past two years before this Court, that itself is not a proper and sufficient consideration. In the analogous case of *Riggs v. Sonney*, *supra* (see Exhibit C), Plaintiff's case had been pending over for over three years before the Court granted Plaintiff's Motion to Voluntarily Dismiss. Instead of looking at the length of time the suit was pending, the Court looked at what had been done substantively during that period, and just like in the case at hand, minimal discovery had been completed and not a single motion for summary judgment had been filed. *Id.*

### Conclusion

In the interests of justice, and with there being no substantive harm to Defendants, Plaintiff asks that his motion be granted.

WHEREFORE, Plaintiff respectfully requests that this Court grant his Motion to Voluntarily Dismiss Case Without Prejudice, and for any further relief that this court deems just and proper.

Dated: February 12, 2019                    /s/    Irene K. Dymkar
                                                   Irene K. Dymkar

Attorney for Plaintiff

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 W. Jackson Blvd., Suite 733
Chicago, IL 60604-3462
(312) 345-0123

## CERTIFICATE OF SERVICE

       I hereby certify that on February 12, 2019, I electronically filed the foregoing Motion with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Alan Remy Taborga
>Office of the Illinois Attorney General
>1776 East Washington Street
>Urbana, Illinois 61802
>(217) 278-3332
>ATaborga@atg.state.il.us
>
>Joseph Rupcich
>Cassiday Schade, LLP
>111 North 6th Street, 2nd Floor
>Springfield, IL 62701
>(217) 572-1714
>jrupcich@cassiday.com

Dated: February 12, 2019                              /s/    Irene K. Dymkar
                                                                             Irene K. Dymkar

Attorney for Plaintiff

Irene K. Dymkar
Law Offices of Irene K. Dymkar
53 W. Jackson Blvd., Suite 733
Chicago, IL 60604-3462
(312) 345-0123