IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ERIC OLLISON,<br>     Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES,<br>INC. *et al.*,<br>     Defendants. | Case No. 1:17-cv-01077-JES-JEH |

**Order**

Before the Court is a Motion for Order Compelling Defendant Gregory Gossett to Answer Deposition Questions and For Sanctions filed by the Plaintiff, Eric Ollison. (D. 358)[1]. For the reasons stated, *infra*, the motion to compel is granted and the request for sanctions is denied.

**I**

**A**

On January 15, 2016, Ollison filed a multi-count Complaint against multiple Defendants related to events which occurred while he was an inmate at various prisons in the Illinois Department of Corrections (IDOC). (D. 1). Specifically, he alleges, among other things, that various IDOC employees, Wexford Health Sources, Inc. (Wexford) (the entity with whom the IDOC has contracted to provide healthcare services to inmates in its custody), and its employees were deliberately indifferent to his serious medical needs, in violation of 42 U.S.C. § 1983. *Id.*

On November 19, 2019, the Plaintiff deposed Defendant Gregory Gossett, the Warden of Illinois River Correctional Center at the times relevant to the

---

[1] Citations to the docket are abbreviated as "(D. __ at ECF p. __.)"

1

Complaint. (D. 1 at ECF p. 6; D. 366 at ECF p. 1). Thereafter, at a hearing held by this Court on February 18, 2020, the Plaintiff moved to re-depose Gossett and three others, based upon email communications disclosed by co-Defendant Wexford after their first depositions had occurred. (D. 285 at 00:06:00 & 00:08:40). This Court ultimately concluded that the re-deposition of Gossett and the three other individuals was warranted in light of the timing of the disclosure of the emails and the contents thereof. *Id.*

Gossett's counsel repeatedly requested that the Court narrowly limit the scope of any re-depositions, but the Court refused to do so, stating as follows:

> I'm not gonna make additional limitation beyond, you know, that, you know, he wants to re-depose these witnesses as it relates to these email communications and you know, you've got four witnesses here over the course of seven hours, I think those natural limitations will be sufficient to ensure that there is no additional fishing expedition as it relates to these witnesses.

*Id.* at 00:44:47.

**B**

Gossett's second deposition occurred on July 16, 2020. Over the course of that two hour and nine minute deposition, Gossett's counsel, Assistant Attorney General Remy Taborga, instructed his client not to answer questions in eighteen separate exchanges with opposing counsel. (D. 358-1).

Some of the exchanges are as follows:

> Ms. Dymkar [Plaintiff's counsel]: Okay. What were the occurrences or the events that would take place that would – would lead to you having a conversation with him?
>
> Mr. Taborga: Objection. This is – go – goes way beyond what the Court has allowed you. The Court said you must be anchored to the emails. Mr. Meyer made a motion to reopen to talk about the emails. There's nothing here about weekly conversations. I'm directing him not to answer that question.

2

>Ms. Dymkar: I'm trying to get some context with regard . . . to . . . this . . . email.
>
>Mr. Taborga: I don't . . . care . . . You – you had your opportunity to depose him about this . . . You missed that opportunity. You are limited to the emails. And I quote, as the – as the Court said, you are anchored to the emails.

*Id.* at pp.14-15.

>Ms. Dymkar: Okay. And so if you're at your office working and you leave to take a break, a lunch break, is your office locked or not locked?
>
>Mr. Taborga: Objection. This is – is going way beyond emails again. I'm directing him not to answer. Stick to the emails. I've been giving you a lot of latitude to get context. But this is way beyond what's in the email.
>
>Ms. Dymkar: Okay. Are you instructing him not to answer?
>
>Mr. Taborga: Yes. I'm instructing him not to answer.

*Id.* at pp. 29-30.

>Ms. Dymkar: Okay. Were you aware of – of – I'm – I'm wondering if you could just read the description of the current incident. Do you see that box?
>
>Mr. Taborga: Objection. I'm directing him not to answer. That is not an email. It– you know what it says. There's no reason for him to read it.
>
>Ms. Dymkar: Okay. I'm going to ask you to read it, sir.
>
>Mr. Taborga: I'm directing him not to answer. Move on.
>
>Ms. Dymkar: Okay. Are you not going to answer that question, any questions about this termination notice?

3

> Mr. Taborga: I'm directing him not to answer any questions beyond the emails.
>
> Ms. Dymkar: He – he – it's his – his right to answer or not answer. So... Sir?
>
> Mr. Gossett: No. I'm not going to answer.
>
> Ms. Dymkar: Okay.
>
> Interjection by Attorney Louis Meyer: And – and just for the record, Remy. This is attached to the emails. So it's part . . . of the disclosure.
>
> Mr. Taborga: But he never saw it, so let's move on. And Judge Hawley was very clear if he didn't see it, he said to move on. And he did say that at– let me see what time – at 37 minutes in the hearing. He said if he's – if he has not seen it, the answer is 'no," and that's it. So you have to move on.

*Id.* at pp. 32-33

> Ms. Dymkar: And you don't recall ever being told in May of 2013 that the medical director, the only . . . doctor at the prison was going to be fired?
>
> Mr. Gossett: Not under my area supervision. So no. . . .
>
> Ms. Dymkar: Did you ever have any conversations with the warden about Dr. Greby and the - - the health care unit?
>
> Mr. Gossett: I was the operations warden, so that fell under program. So no.
>
> Ms. Dymkar: You had meetings with the assistant warden of program and the warden, right?
>
> Mr. Gossett: Yes.
>
> Ms. Dymkar: You had monthly staff meetings.

>Mr. Gossett: Yes.

>Ms. Dymkar: You're required by the administrative directives, right?

>Mr. Taborga: Objection. Again, this is going beyond the emails. I'm directing him not to answer. If you want to go – bring it up to the judge, more than happy to do that.

>Ms. Dymkar: Okay. Are you answering the question, sir?

>Mr. Gossett: Nope.

*Id.* at pp. 34-35.

>Ms. Dymkar: Okay. And there was no one else who had that position at Illinois River, right?

>Mr. Gossett: I don't believe so.

>Ms. Dymkar: Okay. And then – and the next page No. 5 – [of the IDOC job description]

>Mr. Taborga: Objection. I'm – I'm going to object now. This . . . is going way beyond the emails. Again. Irene, you had a chance to ask him these questions in his first deposition.

>You're just having him read it and parrot what's in the document. If you want to ask him what he knew personally, ask him that. Don't just parrot this document, which you gave it to us two days ago.

>You didn't disclose it timely. You didn't give that to me, a chance to even show it to him, because you gave it so late. So I'm going to object and – and ask you to move on.

>Ms. Dymkar: Okay. I'm going to ask you then are – are you going to answer my question, sir? Are you going to refuse to answer it?

>Mr. Gossett: I'll refuse.

*Id.* at pp.39-40.

> Ms. Dymkar: Okay. And were you aware that he was to – to hold staff meetings and that he was responsible for making sure that medical staff met the standards of care?
>
> Mr. Taborga: I'm going to object and direct him not to answer that.
>
> Ms. Dymkar: Are you going to answer that, sir?
>
> Mr. Gossett: No.

*Id.* at pp. 40-41.

> Ms. Dymkar: Okay. Did you believe as warden that it was important to know what had happened that led to Eric Ollison being in—on life support and being in—in—being in—hospitalized?
>
> Mr. Taborga: Objection. This is going beyond the emails. I'm directing him not to answer that.
>
> Mr. Gossett: I'm not going to answer.

*Id.* at pp. 56-57.

> Ms. Dymkar: Do you recall there – you – you – ever making any decision of anybody who would make any of the – or do any of the supervision that Jonathan Sisson did over the healthcare –
>
> Mr. Taborga: I'm going to –
>
> Ms. Dymkar: --unit?
>
> Mr. Taborga: --object and direct him not to answer these questions that go way beyond the emails.

*Id.* at pp. 60.

> Ms. Dymkar: Okay. Did he -- did Dr. -- did Jonathan Sisson tell you at the time that he told you that there were efforts to terminate Dr.

6

<207>Greby that there had been some problems with her kicking a man with a sore leg and pulling the oxygen off of a man with emphysema around that same time in April of 2013?

Mr. Gossett: No.

Ms. Dymkar: Do you -- would you agree that -- that those would be serious matters?

Mr. Taborga: Objection. It goes beyond the emails. I'm directing him not to answer that question.

Ms. Dymkar: Will you answer the question?

Mr. Gossett: No.

*Id.* at pp. 61.

Ms. Dymkar: How often did you substitute for Warden Nicholson as the duty officer or duty administrative officer?

Mr. Taborga: Objection. Goes beyond the emails. I'm directing him not to answer.

*Id.* at pp. 67.

Ms. Dymkar: Okay. All right. So when you became an assistant Warden in March of 2013, what was your orientation, or sometimes called onboarding?

Mr. Taborga: Objection. Goes way beyond the emails. I'm directing him not to answer.

*Id.* at pp. 70.

Ms. Dymkar: So we're trying to determine when you were an assistant warden and when you were a warden. Do you know when you became a warden?

Mr. Gossett: Yes.

7

Ms. Dymkar: When?

Mr. Gossett: August 2013.

Ms. Dymkar: Okay. How did you learn that?

Mr. Gossett: How did I learn it?

Ms. Dymkar: At your last deposition, you gave different dates.

Mr. Gossett: I -- yeah. I'm sorry. I didn't have personnel -- I had to go back and look at the personnel.

Ms. Dymkar: Okay. So you looked at your personnel file?

Mr. Gossett: I did not. I don't have access to my personnel file anymore. I've been retired over five years.

Ms. Dymkar: Okay. And -- and you felt it was necessary to supplement your answers to interrogatories?

Mr. Taborga: Objection. This goes beyond the emails. I'm directing him not to answer.

Ms. Dymkar: Okay. Back to your email in which you said – and -- and -- to which you testified that you learned for the first time in January of 2014 that there was a problem with Carla Greby. Did you have any conversations with Warden Nicholson at the time you became a warden regarding problems with Dr. -- with Dr. Greby? And that would be the date you gave us, August of 2013.

Mr. Taborga: I'm going to object. And again, unless you can point to a particular email, I'm going to direct him not to answer.

Ms. Dymkar: The email's the one we were discussing.

Mr. Taborga: It doesn't talk about Warden Nicholson in there. You specifically asked to talk about email communications. Warden Nicholson is not mentioned anywhere in that email.

8

Mr. Meyer [Plaintiff's co-counsel]: The –

Mr. Taborga: So I'm going --

Mr. Meyer: -- in that email --

Mr. Taborga: -- to object.

Mr. Meyer: -- if you read it, he says I remembered hearing something about that. But –

Mr. Taborga: She asked about that. She explored that. And I did not object. Now she's asking about Warden Nicholson. This is a topic she could've covered in the first deposition, chose not to do so. So I'm -- I'm directing him not to answer that.

Mr. Meyer: It's about the language in the email that was disclosed. We're following up on who may have told him the information where he writes I remember hearing something about that.

Mr. Taborga: And you -- she asked him about that. And he gave an answer to it.

Ms. Dymkar: And I'm asking him whether he had any onboarding or any orientation with -- with Warden Nicholson in which he would have been told about problems with Dr. Greby.

Mr. Taborga: I'm going to object and direct him not to answer.

Ms. Dymkar: Okay.

Mr. Taborga: This is a topic you knew -- you charged Warden Nicholson in this case. You knew Warden Nicholson was involved. And you chose not to ask him when you first deposed him. It's not mentioned in the email, and I'm more than happy to go in front of Judge Hawley to resolve this dispute.

Ms. Dymkar: Okay.

9

BY MS. DYMKAR:

Ms. Dymkar: Will you answer the question, sir?

Mr. Gossett: No.

*Id.* at pp. 72-75.

There are an additional five exchanges wherein Gossett's counsel instructed him not to answer questions, all of which are in a similar vein to those set forth, *supra*. *Id.*

C

On August 14, 2020, the Plaintiff filed a motion to compel Gossett to answer the questions which his counsel directed him not to answer. The Plaintiff also seeks, pursuant to Federal Rule of Civil Procedure Rule 30(d)(2), sanctions.qq The Plaintiff argues that Gossett could only refuse to answer a question "when necessary . . . to enforce a limitation ordered by the court . . ." (D. 358 at ECF p. 2). According to the Plaintiff, counsel's questions were within the limitations set by this Court for the deposition, as the questions were related to the emails which precipitated the re-deposition—the only limitation the Court imposed. The Plaintiff also explains how each question Gossett refused to answer was related to an email which precipitated the re-deposition.

The Defendant does not, in his Response, appear to disagree that the scope of the *Court's* limitation on the scope of Gossett's re-deposition allows only questions related to the 706 emails which precipitated the re-deposition (D. 366 at ECF p. 5), but rather suggests that this "relation" of the emails to questions for Gossett is defined by the arguments the Plaintiff made at the hearing where this Court granted his original motion for re-deposition. The Defendant also explains why Gossett's refusal to answer questions is tied to his counsel's understanding of

10

the limitation on the scope of the deposition imposed by this Court. Given the Defendant's argument that he properly refused to answer the questions, he also argues that no sanction of any kind is appropriate.

## II

### A

As set forth in Federal Rule of Civil Procedure 30(c)(2), where a party has an objection to a question during a deposition, the objection "must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Only three circumstances allow a deponent to refuse to answer altogether: "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3). FED. R. CIV. P. 30(c)(2). Rule 30(d)(3)(A), to which section (c)(2) refers, allows a party to suspend a deposition entirely "for the time necessary to obtain an order" to "terminate or limit [the deposition] on the ground that it is being conducted in bad faith or in a matter that unreasonably annoys, embarrasses, or oppresses the deponent or party." The parties agree that the only basis upon which the deponent here could properly refuse to answer a question is to "enforce a limitation ordered by the court." FED. R. CIV. P. 30(c)(2). They disagree about *what* the Court's limitation, if any, was here.

The answer to this question is not a difficult one. When ruling on the Plaintiff's oral motion at the February 18, 2020 hearing, as already noted, *supra*, this Court ruled as follows:

> I'm not gonna make additional limitation beyond, you know, that, you know, he wants to re-depose these witnesses as it relates to these email communications and you know, you've got four witnesses here over the course of seven hours, I think those natural limitations will be sufficient to ensure that there is no additional fishing expedition as it relates to these witnesses.

11

(D. 285 at 00:44:47). Regardless of any arguments made by Plaintiff's counsel at the hearing or reasons for why the Plaintiff sought Gossett's re-deposition, Plaintiff's arguments are not a limitation set by this Court. Likewise, the Defendant also points to remarks made by this Court during the *arguments* of the parties, in particular emphasizing a single instance where the Court made a reference to "anchoring" questions to the emails at issue. Again, however, a Court's comments or questions while parties argue an issue are not the same as an actual limitation set by the court when *ruling* on those arguments. No one would (or at least should) ever suggest that a comment made by a Justice of the United States Supreme Court during oral argument has any legal effect whatsoever. What matters is the Court's ultimate ruling. The same is true here, and the Court's ultimate ruling rejected the Defendant's request for more stringent, detailed limitations regarding the scope of the re-deposition other than that the questions be "related" to the emails and naturally limited in time by the Court's requiring all four re-depositions to be conducted within seven hours.

      Nor would it matter if Defendant's counsel thought, or even reasonably believed, that he was properly instructing his client not to answer a question in order "to enforce a limitation ordered by the Court." FED. R. CIV. P. 30(c)(2). The Rule contains no scienter requirement; the Rule states, "A person may instruct a deponent not to answer only when necessary to . . . enforce a limitation ordered by the court. . ." It *does not* say to enforce a limitation "that a person believes, or reasonably believes" ordered by the court. In other words, counsel who guesses wrongly about a limitation ordered by the court, even if such a guess was reasonable and made in good faith, still violates Rule 30(c)(2)'s requirement that a deponent answer questions over objection, rather than refuse to answer.

12

B

Understanding the limitation this Court set for the scope of the deposition, which required only that questions be "related" to the 706 emails disclosed after Gossett's first deposition, it becomes apparent that Gossett's counsel violated Rule 30(c)(2) when instructing Gossett not to answer the questions during his second deposition. The Defendant gives various explanations for why he refused to answer questions, including:

- Counsel's questions asked about information that was not discussed in a particular email. (D. 366 at p. 7- 8, 12, 14-15, 17, 19-20, 22, 26, 28-32).
- Counsel's questions involved information that was previously discussed in Defendant's first deposition and not based on new information discovered in the email communications. (D. 366 at p. 7-8, 11, 13, 16, 18, 21-22, 26, 28).
- Counsel's questions were not an attempt to lay a foundation for a particular email. (D. 366 at p. 8, 10, 17, 21, 23).
- Counsel's questions involved an email that was not sent directly to Gossett. (D. 366 at p. 12, 19, 26-27, 29).

None of these reasons offered by the Defendant fall within this Court's limitation that the scope of the deposition be limited to issues "related" to the 706 emails.

Conversely, the Plaintiff carefully explains how each of his counsel's questions was in some way related to an email, either by way of content, context, or issue. (D. 358) (providing an explanation for how each unanswered question relates to one of the email communications). True, the Court's limitation that a question only need be "related" to one of the 706 emails amounted to almost no limitation at all, for the term "related" is an ambiguous term which would encompass an extraordinarily broad range of questions. However, the Court was aware of this breadth of possible questions when it imposed the limitation, which is precisely why the Court noted that the limitation on the *time* of the depositions

13

would provide a "natural limitations [which] will be sufficient to ensure that there is no additional fishing expedition as it relates to these witnesses." (D. 285 at 00:44:47).

Accordingly, because Plaintiff's counsel's questions were well within the scope of the limitation set by this Court, Gossett's counsel's instruction to him not to answer the questions at issue violated Rule 30(c)(2), and the Plaintiff's motion to compel Gossett's answers to those questions is granted. Therefore, the Plaintiff is given leave to re-depose Gossett, ask the questions which Gossett refused to answer, and ask *any* follow-up questions related to Gossett's answer. *See* FED. R. CIV. P. 30(d)(1) (allowing the court to allow additional time for a deposition if the deponent or "another person" "impedes" the examination). The Court limits the length of the deposition to one hour, pursuant to its authority as set forth in Rule 30(d)(1). Although this Court does not have the authority to *sua sponte* order the parties to conduct the deposition by remote means, it does encourage the parties to stipulate to doing so. *See* FED. R. CIV. P. 30(b)(4) (allowing a deposition to be conducted by remote means by stipulation of the parties or by order of the court on a motion).

### III

The Plaintiff also seeks sanctions pursuant to Rule 30(d)(2), requesting that Gossett pay all attorney's fees related to bringing this motion and re-deposing him a third time, expenses related to travel for the re-deposition, and court reporter and transcript fees. He argues that these sanctions are warranted because Gossett's counsel's interference with the deposition was "inexcusable" and that by "not preparing Warden Gossett for the deposition and constantly objecting based on a narrow and erroneous interpretation" of this Court's limitation on the scope of the deposition, Gossett's counsel "obstructed the questioning, blocked the answers, and unreasonably attempted to derail the deposition." (D. 358 at ECF p. 21). The

Defendant's response is that sanctions are inappropriate because, pursuant to Rule 37(a)(5)(A)(ii) & (iii), his actions were "substantially justified" given that, according to him, he was properly attempting to enforce a limitation imposed by the Court. (D. 366 at ECF p. 33).

Federal Rule of Civil Procedure 30(d)(2) provides that a "court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent."

Rule 37, which the Plaintiff does not cite as a basis for sanctions, but the Defendant does in response, provides that upon a court's grant of a motion to compel, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A). This automatic imposition of attorney's fees and expenses on the losing party, however, cannot occur if, for relevant purposes here, "the opposing party's . . . objection was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A)(ii) & (iii).

Because the Plaintiff only asserts Rule 30(d)(2) as a basis for its request for sanctions, the Court will limit its consideration of the issue to this Rule. This limitation matters here because, whereas the shifting of attorney fees and costs in Rule 37 is mandatory and applies only to those expenses flowing from the bringing of the motion itself, Rule 30(d)(2) is discretionary and allows any "appropriate" sanction. Moreover, Rule 30(d)(2) does not mandate that a court *cannot* impose a sanction if "the opposing party's . . . objection was substantially justified or other circumstances make an award of expenses unjust," because, although Rule 37

states this exception, Rule 30(d)(2) does not, except in relation to a motion to terminate or limit a deposition—a motion not made in this case.

The Plaintiff directs this Court to no case where a court imposed a sanction on a party or his counsel based upon a deponent's refusal to answer a question because counsel believed that refusal was justified in order to enforce a limitation ordered by the court. Nor has this Court independently found one in this Circuit. Likewise, this Court is unaware of any other case analyzing the language of Rule 30(c)(2) and concluding that the Rule is violated regardless of any good faith, but mistaken, belief on the part of counsel that an instruction to his client not to answer a question was to enforce a limitation imposed by the court. In light of these two circumstances, the Court concludes that any sanction against the Defendant or his counsel would be inappropriate, unless counsel's objections were made in bad faith or for some other, illegitimate reason. The Court concludes that they were not.

Although Gossett's counsel was mistaken regarding the scope of the limitation for the re-deposition set by this Court, this mistaken belief was not without some justification. First, the limitation set by this Court was made orally, at a lengthy hearing, which can sometimes create ambiguities. Second, the Court did in fact say the things Gossett's counsel relied upon, but just not at the time when the Court was actually pronouncing its final decision on the issue before it. Finally, nothing in the deposition transcript demonstrates to this Court that counsel acted for some other, inappropriate purpose. This case is, and has been for some time, very contentious litigation. Without question, Gossett's counsel's frustration over his differences with opposing counsel concerning the scope of this Court's limitation on the re-deposition seeped into his comments and behavior during the re-deposition, but from reading the deposition, his conduct did not cross the line into unprofessional conduct and was, instead, within the bounds of

normal human emotion when zealously representing one's client. Accordingly, for these reasons, the Court concludes that no sanction is appropriate.

## IV

For the reasons and only to the extent stated, *supra*, the Plaintiff's Motion to Compel is granted. (D. 358). The Plaintiff's motion for sanctions pursuant to Rule 30(d)(2) is denied.

*It is so ordered.*

Entered: October 2, 2020

s/Jonathan E. Hawley
U.S. Magistrate Judge