UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ERIC OLLISON,                          )
    Plaintiff,                         )
                                       )
vs.                                    )     Case No. 17-1077
                                       )
WEXFORD HEALTH SOURCES, et.al.,        )
    Defendants                         )

SUMMARY JUDGMENT ORDER

This cause is before the Court for consideration of Defendants Gregory Gossett,

Corey Wise, and Robbie Johnson's Motion for Summary Judgment. [484]. For the

following reasons, Defendants' motion is GRANTED. [484].

I. BACKGROUND

Plaintiff's remaining claim alleges Defendants Warden Gregory Gossett,

Correctional Counselor Corey Wise, and Correctional Counselor Robbie Johnson

violated Plaintiff's Eighth Amendment rights when they were deliberately indifferent to

his serious medical condition.  Plaintiff's complaint alleges the three Illinois Department

of Corrections (IDOC) employees had notice of Plaintiff's need for medical care due to

three grievances he submitted on December 22, 2013; December 28, 2013; and January 8,

2014. (Comp., [1], p. 16, para. 94).  In addition, Plaintiff maintains Defendant Warden

Gossett was responsible for the overall operation of Illinois River Correctional Center

(IRCC) including the provision of medical services and he "was aware of, facilitated,

and/or turned a blind eye to the deficient practices which ultimately resulted in injury

to (the Plaintiff.)" (Comp., p. 17, para. 103).

II. CLARIFICATION OF THE RECORD

Before considering the dispositive motion and response, the Court must clarify a few issues in the briefing.

Plaintiff asks the Court to strike prior Warden Walter Nicholson's declaration regarding his employment dates. (Plain. Resp., [535], p. 88-89).  Plaintiff argues judicial estoppel prevents a party from "abandoning positions taken in earlier litigation." (Plain. Resp., [535], p. 88, *citation omitted*).  Plaintiff claims Nicholson should not be allowed to claim he was the IRCC Warden until August of 2013 because it is inconsistent with earlier statements.

Specifically, Plaintiff says Nicholson "convinced the court to adopt his position" that he left IRCC sometime in 2012, and he was subsequently dismissed from this case. (Plain. Resp., [535], p. 89).  Plaintiff cites to a Northern District of Illinois order entered on November 29, 2016, before this case was transferred to the Central District. (Plain. Resp., [535], p. 89, *citing* [133]).

This is not the first time Plaintiff has presented this argument. (Plain. Mot., [369]); *see also* January 29, 2021 Case Management Order, p. 3-8.   On January 29, 2021, the Court found "Plaintiff's disingenuous motion mispresents the record before this Court." January 29, 2021 Case Management Order, p. 5.

The Northern District of Illinois Judge specifically stated: "*neither party provides an exact date of Nicholson's departure,* but that is not important because (plaintiff) did not file the Complaint until January 2016." January 29, 2021 Case Management Order, p. 5, *quoting* November 29, 2016 Order, p. 13 (emphasis added).

2

The Court dismissed the claim against Nicholson because it was barred by the two-year statute of limitations period *and* Plaintiff "failed to allege any 'plausible allegations of personal responsibility.'" January 29, 2021 Case Management Order, p. 8, *quoting* November 29, 2016 Order, p. 16. Therefore, the claims against Nicholson were not dismissed based on an assertion that he left the facility in 2012, and in fact, there was no specific finding or evidence regarding when Nicholson left IRCC.

The Plaintiff's summary judgment response also makes several references to the IDOC Defendants failure to intervene in his medical care and specifically cites to the Seventh Circuit Pattern Instruction regarding the "Failure To Protect" an inmate. (Plain. Resp., [535], p. 93, *citing* Seventh Cir. Pattern Inst. 7.16). For clarification, Plaintiff's only claim before the Court alleges the three surviving Defendants violated his Eighth Amendment rights based on deliberate indifference to a serious medical condition. (Comp., [1], p. 23). Plaintiff has not previously alleged a separate claim based on a failure to intervene.

The Court notes Plaintiff has included a heading at the top of his summary judgment response stating: "Oral Argument Requested." (Plain. Resp., [535], p. 1). Plaintiff has failed to comply with local Rule 7.1(A)(2) which states any party requesting oral argument must provide the reason for the request. *See* CDIL LR 7.1(A)(2); *see also Muzzarelli v. United Parcel Service Inc.*, 2017 WL 2786456, at *1, FN. 4 (C.D.Ill. June 27, 2017). The Court finds oral argument is unnecessary.

Finally, the Court has admonished Plaintiff it would no longer "accept confused and convoluted briefing in any dispositive motion, response, or reply concerning the

merits of this case." April 20, 2021 Summary Judgment Order, p. 9; *see also* July 6, 2022 Order, p. 24-25. The Court has provided specific instructions concerning its expectations including admonishing Plaintiff he "MUST NOT review previous history or rulings" and instead must limit his response to the specific issues addressed in the specific motion. April 20, 2021 Summary Judgment Order, p. 10.

Plaintiff was also admonished any asserted facts "MUST BE limited to the facts before the Court" and then provided an example of a previous, irrelevant assertion. *See* April 20, 2021 Summary Judgment Order, p. 10. "These are the same requirements all litigants are expected to follow in briefing before this Court." April 20, 2021 Summary Judgment Order, p. 11.

The Court struck Plaintiff's previous response to the pending summary judgment motion and allowed him additional time to refile his response in keeping with these admonitions and the Court's ruling on expert witnesses. *See* July 6, 2022 Order, p. 24-25.

Nonetheless, Plaintiff's revised summary judgment response ignores these warnings and spans nearly one thousand pages with exhibits and cites to several additional exhibits in the record. (Plain. Resp. [535]). Plaintiff has propounded 232 additional material facts, some of which are clearly unrelated to the one surviving claim against three nonmedical Defendants at IRCC.[1] For instance, Plaintiff provides a chronology of Plaintiff's medical condition and doctor's findings at previous facilities

---

[1] Defendants maintain at least 137 of the 232 alleged additional facts are no related to the issues currently before the Court. (Def. Reply, [547], p. 154).

including a county jail. (Plain. Resp., [535], AMF #20-31). Plaintiff does not explain how any of this information was available or relevant to the non-medical Defendants.

Plaintiff's additional facts also include statements which are not "undisputed." For instance, Plaintiff says the Defendant Warden knew about the facility doctor's "gross failures and incompetence…but turned a blind eye to it." (Plain. Resp., [535], AMF #54).  Furthermore, none of the cited documents in support of this fact clearly demonstrate Defendant Gossett had specific knowledge of an issue with Dr. Carla Greby.

At several points, Plaintiff includes statements of fact which are unsupported by the cited documents.  For instance, Plaintiff alleges Defendant Gossett was "underqualified for the job of Warden" because he did not have a college education, "no license or certifications," and "no medical or nursing training." (Plain. Resp., [535], AMF #50, 51).  Plaintiff has failed to demonstrate any of the listed items were requirements of the job.[2]

Plaintiff also states this Court "ruled as a matter of law that defendant Gossett came to Illinois River in March of 2013 as an Assistant Warden…" (Plain. Resp., [535], AMF #10).  The Court specifically allowed Plaintiff "to argue at summary judgment or at trial that Defendant Gossett worked at Illinois River Correctional Center prior to March of 2013." July 6, 2022 Order, p. 23.  However, for the reasons provided in the

---

[2] The job requirements list "knowledge, skill and mental development *equivalent* to completion of four years of college." (Plain. Resp. [495]. Ex. 28)(emphasis added).  There is no mention of certificates, a license, or medical training, and Defendant Gossett testified he had 28 years of correctional experience when he applied for the job. (Plain. Resp. [495]. Ex. 14, Goss. Depo., p.  24-25).

order, Plaintiff was advised he could no longer base his argument solely on Defendant Gossett's first, corrected deposition.  Instead, Plaintiff was advised he must provide "specific testimony or documents" to demonstrate a different start date.  July 6, 2022 Order, p. 23.

Consequently, the Court has not included most of Plaintiff's additional facts in the overview below.  However, in the argument section of Plaintiff's response, he cites to specific facts. (Plain. Resp., [535], p. 88-111).  In each instance, the Court has reviewed the cited material.

### III.  STATEMENT OF FACTS

A doctor diagnosed Plaintiff with chronic kidney disease in March of 2011, prior to his incarceration at IRCC. (Def. Memo., [485], UMF # 2). Plaintiff does not have any medical training, and after his last visit with the doctor on September 20, 2011, he believed his kidney problem "was healed." (Def. Mot., [382], Ex. 2, Plain. Depo, p. 79; Plain. Resp., [535], AMF #2, 21).

Plaintiff was transferred to IRCC in January of 2012 where he remained until January of 2014. (Def. Memo., [485], UMF # 1).   Defendant Gossett was the Assistant Warden of Operations at Illinois River from March of 2013 until he became Warden in September of 2013.[3] (Def. Memo., [485], Ex. 3, p. 2).  Plaintiff remained in this position until June of 2015. (Def. Memo., [485], Ex. 3, p. 2).

---

[3] Plaintiff has not presented evidence to rebut this claim.

The Warden's job description stated he "administers and directs the overall operations, programs and activities of the Illinois River Correctional Center, formulates policy, procedures, rules, regulations and institutional directives for employees and inmates; directs assigns, evaluates work activities and areas of responsibility for all department heads; plans and approves facility's fiscal budget; develops and implements policies and procedures." (Plain. Resp., [495], Ex. 28).

Defendant Gossett does not have medical training, he is not a medical professional, and he does not make determinations concerning what medical care an inmate receives. (Def. Mot., [382], Ex. 4, Goss. Depo, p. 140, 145). Defendant Gossett does not know the symptoms associated with the progression of kidney disease. (Def. Mot., [382], Ex. 4, Goss. Depo, p. 127).

Both Defendant Johnson and Defendant Wise were Correctional Counselors II at Illinois River from December of 2013 to January of 2014. (Def. Memo, [485], UMF #13, 19).

Defendant Johnson served as a Grievance Officer and his job included reviewing and responding to inmate grievances, drafting grievance officer reports, providing recommendations to the Chief Administrative Officer for issues and complaints alleged in inmate grievances, conducting orientation for new inmates, and maintaining safety and security at the facility. (Def. Memo, [485], UMF #14); (Def. Mot. [382], John. Depo., p. 19-21); Def. Memo., [485], Ex. 5).

Defendant Johnson does not have any medical training and is not a medical professional. (Def. Mot., [382], John. Depo., p. 50). Instead, Defendant Johnson relied on

7

medical staff when responding to grievances concerning medical issues. (Def. Memo, [485], UMF #17).

Defendant Wise handled the initial processing of grievances. (Def. Memo, [485], UMF #21).  His specific duties included working with inmates to resolve their issues or complaints, forwarding inmates' issues and complaints to the appropriate department at the facility, and responding to inmate's grievances. (Def. Memo., [485], Ex. 6). Defendant Wise says he typically collected grievances in person from inmates. (Def. Mot., [382], Ex. 6, Wise Depo., p. 25-26).

Defendant Wise also confirms he has no medical training, and therefore he would forward any grievances concerning medical care to the Director of Nursing, Edna Greenhagen. (Def. Memo., [485], UMF #24; Def. Memo, [382], Ex. 6, Wise Depo., p. 43). After the Director of Nursing reviewed the grievance, she would send her response directly to Grievance Officer Johnson. (Def. Mot., [382], Ex. 6, Wise Depo., p. 39). Therefore, Defendant Wise would have no further contact with the grievance after forwarding it to Greenhagen. (Def. Mot. [382], Ex. 6, Wise Depo., p. 39-40).

Plaintiff's Complaint alleges he submitted three grievances concerning his serious medical condition during the relevant time. (Comp., [1], p. 16).   While Plaintiff knew he needed medical care, he did not know he was suffering from chronic kidney disease when he wrote his grievances. (Def. Mot., [382], Ex. 2, Plain. Depo., p. 163).

Plaintiff's first grievance (Grv. No. 13-1071) was dated December 22, 2013. (Def. Mot., [382], Ex. 7, Grv., p. 1).  Plaintiff reported he took medication for high blood pressure and high cholesterol, but the dosage was recently changed.  Since that time,

8

Plaintiff claimed he experienced high blood pressure.  Specifically, Plaintiff said he was "light-headed, sleeping all day and unable to perform throughout the day as I was before my medication was downgraded." (Def. Mot., [382], Ex. 7, Grv., p. 1).  Plaintiff also stated he recently threw up and had problems keeping food down.  Plaintiff expressed concerns about his symptoms.

> I am basically begging you to have me fully checked out to make sure nothing is wrong.  I am only 30 years old there is no way my body should be reacting this way." (Def. Mot., [382], Ex. 7, Grv., p. 2).

In the "Relief Requested" portion of the grievance, Plaintiff asked for his "medication to be changed back to what I was taking at first, it was working well." (Def. Mot., [382], Ex. 7, Grv., p. 1).

Plaintiff gave his grievance directly to Defendant Wise on December 26, 2013. (Def. Memo, [484], UMF #29). Defendant Wise's response is dated the same day and states only "Sent to D.O.N." or Director of Nursing. (Def. Mot., [382], Ex. 7, Grv., p. 1; (Def. Mot., [382], Ex. 6, Wise Depo., p. 29 -31).

Nursing Director Greenhagen agrees she reviewed all grievances pertaining to any kind of medical issue.  (Plain.  Resp., [495], Ex. 22, Green. Depo. p. 71-72). Greenhagen says she would typically read the grievance and then review the inmate's medical chart. (Plain.  Resp., [495], Ex. 22, Green. Depo. p. 74). However, during her deposition on September 25, 2019, Greenhagen stated she did not remember responding to Plaintiff's December 22, 2013 grievance. (Plain.  Resp., [495], Ex. 22, Green. Depo. p. 123). Greenhagen stated she usually kept handwritten documentation of her review, but

there was no documentation with Plaintiff's first grievance. (Plain. Resp., [495], Ex. 22, Green. Depo. p. 121).

The Court notes Plaintiff's medical records at the time indicated he met with Physician's Assistant Connie Sword on December 26, 2013 and discussed his complaints concerning the side effects of his medication. His medication was changed and a follow-up visit was scheduled in a week. (Def. Mot., [382], Ex. 7, Grv., p. 1). This was the same information provided in Defendant Johnson's written response to Plaintiff's grievance on January 1, 2014.

> The offender alleges his meds were changed and he is not reacting well to them and requests the meds be changed. DON Greenhagen states his meds were changed on 12-26-13 … and the inmate needs to wait to see how he respond to them. He has a follow up apt. on 1-2-14. (Def. Mot., [382], Ex. 7, Grv., p. 3).

Defendant Johnson found the grievance was therefore moot and Assistant Warden Stephanie Dorethy concurred with this decision on January 3, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 3). Defendant Gossett did not review Plaintiff's December 22, 2013 Grievance. (Def. Memo., [485], UMF #52).

Plaintiff's second grievance (Grv. No. 14-0140) was dated December 26, 2013, but Plaintiff signed and dated the grievance on January 2, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 4; Def. Mot., [485], UMF # 64). Plaintiff checked the box indicating he was submitted it as an emergency grievance. (Def. Mot., [382], Ex. 7, Grv., p. 4).

Plaintiff claimed he had been in and out of the Health Care Unit for the last two weeks to have his blood pressure checked. Plaintiff reported he was suffering with "light-headiness, vomiting, swelling of the face and shivering ever since I have been

10

placed on these medications." (Def. Mot., [382], Ex. 7, Grv., p. 4).  Plaintiff also said he

began experiencing chest pains and he no longer needed to use the bathroom on a

regular basis. Further, Plaintiff stated others "have been noticing how my performance

in the recreation area has been decreasing since the taking of this pill."  (Def. Mot., [382],

Ex. 7, Grv., p. 5).

　　　Plaintiff said he had complained to medical staff, but they just told him the

medications would not cause the symptoms he reported.  Plaintiff disagreed and said

he "didn't start having these effects until taking this Lisinipril." (Def. Mot., [382], Ex. 7,

Grv., p. 5).  In the "Relief Requested" section, Plaintiff stated he "would like for this

matter to be further investigated and address this matter." (Def. Mot., [382], Ex. 7, Grv.,

p. 4).

　　　On January 3, 2014, Defendant Warden Gossett reviewed the grievance and

checked the box on the form indicating "an emergency is not substantiated. Offender

should submit this grievance in the normal manner." (Def. Mot., [382], Ex. 7, Grv., p. 4;

Def. Mot., [485], UMF #66).  Defendant Gossett says he questioned how ill Plaintiff was

since his grievance stated he was still going to the recreational area where inmates

"[p]lay basketball, lift weights, walk around the track, walk around the gym, whatnot."

(Def. Mot., [382], Ex. 4, Goss. Depo., p.  143). Defendant Gossett believed Plaintiff's

statement indicated he was still able to exercise. (Def. Mot., [382], Ex. 4, Goss. Depo., p.

143-144)

Defendant Wise provided his written response on January 14, 2014 stating only that the grievance was referred to the Director of Nursing with a "fact sheet." (Def. Mot., [382], Ex. 7, Grv., p. 4).

The Defendants have provided a copy of a document entitled "Inmate Grievance Fact Sheet" which is a memorandum from Grievance Officer Dave Long to Nursing Director Greenhagen dated January 14, 2013 and requests a response within ten days concerning Plaintiff's "medical treatment." (Def. Mot., [382], Ex. 7, Grv., p. 7). Plaintiff was transported to the hospital two days later.

Greenhagen did ultimately provide her handwritten response on February 27, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 7).

> I have reviewed his chart. He was seen in the HCU (Connie Sword) did her exam and she stopped his Lisinopril and increased his Atenolol and ordered daily b/p checks on him. This is a chance that every medication could cause nausea or vomiting but you will not know unless it is tried to see if the patient will tolerate.

On March 21, 2014, Defendant Johnson provided the grievance officer response. The Defendant noted Plaintiff complained "the medication he was placed on was not helping him and causing siding effects. Inmate was requesting further care." (Def. Mot., [382], Ex. 7, Grv., p. 6).

> DON Greenhagen states staff were attempting to assist the inmate with his ailment. Medications may have side effects, but you don't know how individual patients will react until a medication is tried. (Def. Mot., [382], Ex. 7, Grv., p. 6).

Defendant Grievance Officer Johnson also stated he was "reasonably satisfied that HCU was attempting to assist the inmate with the medication given. Further care is

available as necessary." (Def. Mot., [382], Ex. 7, Grv., p. 6). The Defendant found the second grievance was moot and Defendant Gossett concurred with the decision on March 25, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 6).

Plaintiff's third and final grievance was dated January 8, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 8). Plaintiff did not sign or date the grievance, nor was the grievance submitted as an emergency. (Def. Mot., [382], Ex. 7, Grv., p. 8). Plaintiff says he was not able to put the document in the grievance box because of a flu outbreak at Illinois River. (Plain. Mot., [495], Ex. 1, Plain. Dec., Para. 55). Therefore, Plaintiff instead gave the grievance to a Correctional Officer who was not one of the named Defendants. (Plain. Resp. [495],. Ex. 1, Plain. Dec., Para. 56).

There is no evidence in the record demonstrating the Defendants received or reviewed this document. It was not file stamped as received, no grievance number was assigned, and there is no response from a grievance counselor or officer. (Def. Mot., [382], Ex. 7, Grv., p. 8).

Plaintiff's third grievance reports Physician's Assistant (P.A.) Swords went through the housing unit on January 8, 2014 asking inmates if they had any problems with vomiting, diarrhea, nausea, or feeling light-headed. Plaintiff noted he had suffered on and off with these symptoms for a couple of weeks. (Def. Mot., [382], Ex. 7, Grv., p. 8). Plaintiff spoke to Swords and submitted grievances, but Swords continued to tell him his medications would not make him vomit. Plaintiff's housing unit was now on lockdown quarantine due to several inmates reporting the same symptoms. (Def. Mot., [382], Ex. 7, Grv., p. 8).

13

Plaintiff claimed the problem could have been avoided if P.A. Swords took his claims seriously. (Def. Mot., [382], Ex. 7, Grv., p. 8).  Plaintiff also complained he had to submit urine and blood tests ordered by the doctor twice on the same day because the first tests were lost.  (Def. Mot., [382], Ex. 7, Grv., p. 8-9).  Plaintiff claimed nursing staff did not take their jobs seriously.

Finally, in the "Relief Requested" section, Plaintiff stated he was "seeking to take these matters to a higher authority and want for my medical records to be handed over to me, I feel my health is a risk and medical don't care." (Def. Mot., [382], Ex. 7, Grv., p. 8).

On January 16, 2014, Plaintiff was taken to the emergency room at Graham Hospital in Canton, Illinois. (Plain. Resp.,[535], AMF #5). Later the same day, he was moved to St. Francis Medical Center in Peoria, Illinois. (Plain. Resp.,[535], AMF # 6). Plaintiff was diagnosed with acute renal failure. (Comp., [1], p. 20).

After stays in various hospitals, Plaintiff returned to IDOC custody on April 4, 2014. (Plain. Resp.,[535], AMF #7, 8)

## IV. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest

14

on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  *Id.*

## V. ANALYSIS

Defendants Johnson, Wise, and Gossett argue Plaintiff cannot demonstrate they violated his constitutional rights. To establish an Eighth Amendment violation, Plaintiff must show he suffered from a serious medical need and the Defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

"To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties v. Carter*, 836 F3d 722, 728 (7th Cir. 2016), *citing Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). In other words, "a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Petties,* 836 F3d at 728 (emphasis in original), *citing Farmer v Brennan*, 511 U.S. 825, 844 (1994).

A non-medical prison official "generally does not act with deliberate indifferent 'if she reasonably relied on the judgment of medical personnel.'" *Eagan v. Dempsey*, 987 F.3d 667, 694–95 (7th Cir. 2021), *quoting Miranda v. Cnty. of Lake*,900 F.3d 335, 343 (7th

Cir. 2018). Instead, "[n]on-medical officials are presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care.'" *Eagan*, 987 F.3d at 694 (internal quotation omitted); *see also Hayes,* 546 F.3d at 527 ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one.").

"A plaintiff may rebut this presumption by showing (defendants) had reason to know that their medical staff were failing to treat or inadequately treating an inmate.'" *Eagan,* 987 F.3d at 694 (internal quotation omitted); *see Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005)(non-medical staff not deliberately indifferent, but "[p]erhaps it would be a different matter if (defendant) had ignored (plaintiff's) complaints entirely."). Deliberate indifference can also be demonstrated "with evidence that those employees ignored or interfered with a course of treatment prescribed by a physician." *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016), *citing Estelle,* 429 U.S. at 104-105 (deliberate indifference established by prison officials "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."). Mere negligence is not sufficient. *Eagan,* 987 F.3d at 694.

Plaintiff first alleges the Defendants had notice of his serious medical condition due to his three grievances.[4]

---

[4] The Court understands Plaintiff alleges Defendant Warden Gossett turned a blind eye to ongoing problems with the facility's doctor, but Plaintiff also alleges his grievances provided Defendant Gossett with notice of his condition.  In addition, the only basis of Plaintiff's claim against Defendants Wise and Johnson are Plaintiff's three grievances. (Comp. [1], para. 42, 96, 100).

Plaintiff's first grievance on December 22, 2013 focused on the side effects of his medication. Plaintiff begged for medical attention noting he was feeling light-headed, and he was having difficulty keeping food down. The specific "relief" Plaintiff requested asked for medical staff to change his medication to his previous prescription since "it was working well." (Def. Mot., [382], Ex. 7, Grv., p. 1).

Defendant Wise says he immediately submitted Plaintiff's grievance to the Director of Nursing. Defendant Johnson then provided the written grievance response noting Nursing Director Greenhagen confirmed Plaintiff had met with medical staff on December 26, 2013, his medication was changed, and a follow up appointment was scheduled in a week. Plaintiff's grievance was consequently denied.

As noted, the Seventh Circuit has held a grievance officer is not deliberately indifferent if he "investigated the complaints and referred them to the medical providers who could be expected to address (plaintiff's) concerns." *Greeno,* 414 F.3d at 656.

Plaintiff claims there is no proof Defendants Wise or Johnson referred Plaintiff's grievance to medical staff. This is not an accurate statement of the record. Nursing Director Greenhagen stated she did not remember reviewing Plaintiff's first grievance and did not see her typical, handwritten review in the record. (Plain. Resp., [495], Ex. 22 Green Depo, p. 121, 123). Nonetheless, Defendant Grievance Officer Johnson's written response provides a statement from "DON Greenhagen" concerning Plaintiff's medical care, and this statement is an accurate recitation of Plaintiff's relevant medical records. (Def. Mot., [382], Ex. 7, Grv. 3). At the least, the record demonstrates the grievance

17

officers obtained information verified in Plaintiff's medical records before responding to his specific complaints.

Plaintiff next claims his grievance reported symptoms which "were indicative of uremia" and therefore Defendants Wise and Johnson should have set up a meeting with the Plaintiff and directly contacted IRCC's doctor and physician's assistant. (Plain. Resp., [535], p. 108).

Grievance officers are not required to have medical training and Plaintiff's grievance was insufficient to provide a lay person with notice of any medical condition beyond dissatisfaction with his current medication and related side effects. *See Vance,* 97 F.3d 993 ("plaintiff still has the burden of demonstrating that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety.")(internal quotation omitted); *Demus v. Nickerson*, 2019 WL 1923399, at *5 (N.D.Ill. April 30, 2019)(grievance did not sufficiently notify officer of plaintiff's continuing medical needs or problems obtaining relief). In addition, while the grievance procedures indicate an officer *may* speak to the inmate or witnesses, it is not a requirement. *See* 20 Ill. Admin. Code §504.830.

Finally, "the law encourages non-medical … administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *see also Degrado v. Carter*, 2021 WL 3737712, at *5 (N.D.Ill. Aug. 24, 2021)("In other words, a nonmedical prison official may find safe harbor by investigating and referring medical complaints to medical staff."). The

Court finds no reasonable juror could find the response to the first grievance demonstrates deliberate indifference.

Plaintiff's second grievance again complained his medications were causing concerning symptoms.  In addition to feeling light-headed and having problems eating, Plaintiff said he had chest pains, he was not using the toilet on a regular basis, and his "performance in the recreation area has been decreasing." (Def. Mot., [382], Ex. 7, Grv., p. 5).  Plaintiff stated he did not have any of the reported symptoms until he started taking a new medication which he identified. (Def. Mot., [382], Ex. 7, Grv., p. 5). Plaintiff filed his grievance as an emergency and asked for further investigation.

Defendant Warden Gossett immediately found the grievance did not qualify as an emergency.  The Defendant did not believe Plaintiff faced immediate danger or harm since Plaintiff admitted he was still going to the recreation yard.  Therefore, Plaintiff was instructed to submit his grievance through the normal procedures.

Defendant Wise received Plaintiff's second grievance on January 14, 2014 and again sent the matter to the nursing director for review.  On March 21, 2014, Defendant Johnson provided a written response.

The nursing director confirmed Plaintiff met with medical staff, they were attempting to address his complaints, but they could not predict how an individual would react to a new medication. Defendant Johnson denied the grievance noting he was "reasonably satisfied" medical staff was attempting to address Plaintiff's complaints. (Def. Mot., [382], Ex. 7, Grv., p. 6).  Defendant Gossett concurred with this decision.

19

Plaintiff repeatedly argues Defendant Warden Gossett was deliberately indifferent to Plaintiff's medical condition when he failed to consult medical staff before finding Plaintiff's second grievance was not an emergency.   In fact, Plaintiff argue "[i]t was incumbent on Gossett to consult with medical personnel." (Plain. Resp., [535], p. 95).  Plaintiff does not provide any support for this statement. [5]

Instead, courts have specifically held a Warden's finding that a grievance does not qualify as an emergency does not demonstrate deliberate indifference. *See Williams v. Wexford Health Sources, Inc.*, 2021 WL 3722799, at *11 (S.D.Ill. Aug. 23, 2021) ("[d]etermining a grievance is not an emergency 'no more manifests deliberate indifference to the underlying problem than does a judge's decision dismissing a § 1983 suit as barred by the statute of limitations.'"); *quoting Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009); *see also McCorkle v. Brookhart*, 2021 WL 5396067, at *2 (S.D.Ill. Nov. 18, 2021)(failing to find grievance was an emergency does not state a claim of deliberate indifference, warden directed inmate to send his grievance through the normal procedures and there was no indication warden personally denied plaintiff medical care).

---

[5] Plaintiff cites to three cases which do not address or mention a Warden's personal responsibility to consult with medical staff before denying an emergency grievance.  *See Thomas v. Wexford Health Services, Inc.*, 414 F.Supp.3d 1154, 1163 (N.D.Ill. Oct. 9, 2019) (claim against warden survives summary judgment based on warden's personal conversations with plaintiff, plaintiffs emergency grievances, defendant's responsibility over those grievances, and no evidence warden "or any of his subordinates" conferred with medical staff during grievances process); *Flournoy v. Ghosh*, 881 F.Supp.2d 980, 991 (N.D.Ill. July 24, 2012)(ruling did not concern emergency grievance, nor warden's responsibility to personally contact medical department); *Snow v. Obaisi*, 2021 WL 4439421, at *8–9 (N.D.Ill. Sept. 28, 2021)(facility provided no response to grievances and no contact was made with medical staff).

In addition, the grievance procedures do not require a Warden to investigate before determining whether a grievance will be handled on an emergency basis. *See* 20 Ill.Admin.Code. §504.840(c).

Nonetheless, Plaintiff maintains "[t]o the extent the Warden argues that emergency treatment should be afforded only if the Warden, without any medical knowledge, deem is it life-threatening, that is 'illogical and inhumane.'" (Plain. Resp. [535], p. 96).

Throughout his brief, Plaintiff confuses the grievance process with requests for medical care. None of the IDOC employees involved in reviewing grievances are required to have medical training, and none are tasked or qualified to analyze symptoms or determine what medical care an inmate should receive. Instead, grievance reviewers are only required to refer medical complaints to the Health Care Unit to ensure medical staff is aware of and addressing an inmate's concerns. *See Greeno,* 414 F.3d at 655-56 ("We do not think (the grievance officer's) failure to take further action once he had referred the matter to medical providers can be viewed as deliberate indifference."); *see also Adams v. Durai*, 153 Fed.Appx. 972, 975 (7th Cir. 2005) ("An administrator does not become responsible for a doctor's exercise of medical judgment simply by virtue of reviewing an inmate grievance."). This "division of labor between medical staff and administrative staff has been recognized by the courts." *Thomas v. Vaisvilas*, 2009 WL 1307574, at *7 (N.D.Ind. May 8, 2009); *citing Greeno,* 414 F.3d at 656.

Plaintiff also argues a "jury should be allowed to determine whether it was a substantial departure from accepted standards of medical care for there not to be a review of Plaintiff's medical chart until February 27, 2014 when responding to (Plaintiff's) December 26, 2013 grievance." (Plain. Resp., [535], p. 110).   Again, Plaintiff cannot apply "accepted standards of *medical* care" to non-medical Defendants.

The Court also notes Plaintiff was instructed to submit his grievance through the normal procedures. These procedures do not require an expedited reply.  Instead, the grievance officer is directed to report any findings to the Warden "within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code.  § 504.830 (e).

In this case, Defendant Wise received Plaintiff's grievance on January 14, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 4).  On the same day, grievance officers sent a fact sheet to the nursing director requesting a response within 10 days. (Def. Mot., [382], Ex. 7, Grv., p. 7). Two days later, Plaintiff was taken to the emergency room and did not return to IDOC custody until April 4, 2014.  Nonetheless, the grievance officer provided his findings to the Warden on March 21, 2014. (Def. Mot., [382], Ex. 7, Grv., p. 6).

Plaintiff did not know he was suffering from symptoms related to his kidney disease when he submitted his second grievance and consequently, he did not provide the non-medical Defendants with notice of this condition.  Instead, Plaintiff reported his additional problems with a new medication, Defendants referred the matter to medical staff, and medical staff confirmed they were addressing Plaintiff's complaint. Based on the record, Defendants were not deliberately indifferent to Plaintiff's second grievance.

22

There is no evidence suggesting Defendants Wise, Johnson, and Gossett received Plaintiff's third grievance dated January 8, 2014.   While Plaintiff says he gave the document to a correctional officer, there is no indication it was provided to the grievance officers.  Furthermore, Plaintiff's grievance states if medical staff had paid more attention to his symptoms, specifically vomiting, diarrhea, nausea, and feeling light-headed, they might have been able to avoid the flu outbreak at IRCC.  The grievance does not provide notice of kidney disease or a lack of care for kidney disease.

As repeatedly noted, Defendants Wise, Johnson, and Gossett do not have medical training and are not qualified to recognize and diagnose medical conditions. The record demonstrates they were not deliberately indifferent to Plaintiff's complaints and referred each received grievance to medical staff for a response.  In each instance, medical staff reported they were aware of Plaintiff's concerns and had either changed his medication or were working to find a new medication.

The record also demonstrates Defendant Wise's only personal involvement was collecting the first two grievances and immediately forwarding each to the nursing director for a response.  Defendant Johnson then provided a grievance response based on the medical record and consistent with the grievance procedures.  There is also no evidence demonstrating either Defendants delayed or denied prescribed medical care. Since the only claims against Defendants Wise and Johnson are based on the grievance procedure, the motion for summary judgment is granted as to both Defendants.

Plaintiff has also failed to demonstrated Defendant Warden Gossett violated his Eighth Amendment rights based on the Warden's response to his grievances. However,

23

Plaintiff maintains his allegations against Warden Gossett are not limited to these documents. Plaintiff also alleges a supervisor liability claim accusing Defendant Gossett of turning a blind eye to problems with IRCC medical care.

Defendants argue Plaintiff's summary judgment response relies on radically new factual allegations to support this claim. The Seventh Circuit has held "it is factual allegations, not legal theories, that must be pleaded in a complaint." *Whitaker v. Milwaukee Cnty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014); *see also Chessie Logistics Company v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). Therefore, a plaintiff may not attempt to improperly amend a complaint in response to a summary judgment motion by adding an entirely new factual basis to support a claim. *See Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017)(plaintiff may not proceed with allegations which "require factual bases not adequately pled in the complaint"); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)("plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Furthermore, district courts need not consider a new factual basis presented in response to a dispositive motion. *See Whitaker,* 772 F.3d at 808 (explaining its decision in *Abuelyaman* supported district court's refusal to consider a new factual basis for a retaliation claim); *Abuelyaman v. Ill. State Univ.*, 667 F.3d 800, 814 (7th Cir.2011) ("[i]t is well settled that a plaintiff may not advance a new argument in response to a summary judgment motion.").

Plaintiff's complaint specifically alleged Defendant Gossett was responsible for the overall operations at IRCC including medical services and for promulgating rules,

regulations, policies, and procedures. (Comp., [1], p. 18).  As supervisor, Plaintiff maintains Defendant Gossett was "aware of, facilitated, and/or turned a blind eye to the deficient practices which ultimately resulted in injury to (Plaintiff)." (Comp.,[1], p. 18).  This was the only factual basis Plaintiff provided for any claim based on supervisor liability.

Defendants correctly note Plaintiff's complaint made no mention of the Health Care Administrator's tenure, Dr. Greby's absenteeism, Wexford's consideration of terminating Dr. Greby's employment, an alleged cover up, or Defendant Gossett's knowledge of any specific decencies in the provision of medical care.

Plaintiff was alerted to the problem with the scant factual basis provided for the supervisor liability claim as far back as November of 2016 when the Northern District of Illinois granted Defendant Wardens Hardy and Nicholson's motion to dismiss.  Unlike Defendant Gossett, Plaintiff did not allege either Warden Hardy or Nicholson had any direct knowledge of Plaintiff's medical condition through the grievance process.

> (Plaintiff) argues that (the wardens) are nevertheless liable because
> they were "aware of the practices that cause[d] (Plaintiff's) injury"
> and "facilitated and/or turned a blind eye to those practices." Pl.'s
> Resp. Br. at 11. Furthermore, (Plaintiff) alleges that Hardy and
> Nicholson "purposefully ignor[ed] their subordinates' misconduct."
> But these are "mere conclusory statements" that simply recite the
> elements of supervisory liability, and thus are insufficient to support
> a plausible claim. It would be one thing if (Plaintiff) had alleged (as some
> prisoners do) that he wrote letters to the Wardens, informing them of
> the lack of medical treatment, or that he had spoken with the Wardens
> about the problem. But (Plaintifff) has provided no factual
> allegations that suggest Hardy and Nicholson knew specifically of
> (Plaintiff's) kidney disease and inability to receive treatment. Nor does
> he allege other instances of deliberate indifference at either facility that
> would support the inference that Stateville or Illinois Rivers personnel

were *systemically* withholding medical care from prisoners. November 29, 2016 Order, p. 15-16 (internal cites to caselaw omitted).

Plaintiff's supervisor liability claim against Defendant Gossett is virtually identical to the dismissed claim against former Defendants Hardy and Nicholson.[6] *See* Comp., [1], Hardy (para. 16-18); Goss (para. 29, 30, 32); Hardy (para. 57-58); Goss. (para. 100-101). Yet even with this clear warning, Plaintiff made no attempt to amend the initial complaint filed on January 15, 2016 and therefore six years later, it remains the operative complaint.[7]

Plaintiff cannot present new factual allegations in support of his supervisor liability claim in his summary judgment response, and therefore the Court will not consider these arguments. *See Palmer v. City of Decatur*, 2021 WL 7707939, at *40 (C.D.Ill. Sept. 20, 2021)("[p]laintiff did not adequately plead his claims regarding the additional evidence… and introducing them in his Response to Defendants' motion for summary judgment was not sufficient to survive that motion."); *Applewhite v. Deere & Company, Inc.*, 2020 WL 7029889, at *18 (C.D.Ill. Nov. 30, 2020)(court will not consider new basis for retaliation claim, not alleged in complaint); *Alonso v. Weiss*, 301 F.Supp.3d 885, 896

---

[6] There are two differences in the allegations against Wardens Nicholson and Hardy compared to the allegations against Defendant Gossett. First, there are two paragraphs which refer to Plaintiff's IRCC grievances. (Comp., [1], (para. 100-101)). The Court has found the grievances did not provide notice of chronic kidney disease, and Defendant Gossett was not deliberately indifferent to Plaintiff's complaints. Second, there is one additional paragraph alleging Gossett was responsible for "reducing strife and enhancing harmony "by enforcing, rules, polices and effective resolution of grievances. (Comp., [1], (para. 31)).

[7] Defendants also note Plaintiff's interrogatory responses provided little additional information concerning the factual basis for his supervisor liability claim. *See* (Def. Memo., [485], Ex. 1, Int. #2; Ex. 2, Supp. Resp. #2).

(N.D.Ill. March 14, 2018)("This is an impermissible attempt to constructively amend the complaint and therefore need not be considered at summary judgment."

Even if the Court were to consider Plaintiff's arguments, Plaintiff has failed to adequately demonstrate his claim.  Plaintiff maintains Defendant Warden Gossett had "Ample Notice That Dr. Greby was Incompetent, Erratic, and a Risk to the Health of Inmates." (Plain. Resp., [535], p. 97).   However, Plaintiff fails to cite to evidence which supports this claim.

For instance, Plaintiff says Wexford Regional Manager Stacy Moore "frequently met with Gossett" and the Assistant Wardens to discuss what happened "that week at the facility regarding healthcare." (Plain. Resp., [535], p. 98, *citing* AMF #115). Plaintiff then cites to two depositions.

Defendant Gossett said he did not remember how often he saw Moore, but she would usually stop by to say hello when she came to IRCC.  He did not testify they had conversations concerning healthcare problems and he specifically stated he did not remember a conversation about Dr. Greby. (Plain Resp., [495], AMF #115, *citing* Ex. 16, Goss. Depo. p. 149-150).

Wexford Manager Moore testified it was her practice to speak to the wardens before she went to the Healthcare Unit, but she did not say how often she went to IRCC, nor what was discussed, and she did not mention specifically speaking to Defendant Gossett. (Plain. Resp.,[495], AMF #115, *citing* Ex. 26, Moore Depo. p. 88).

Plaintiff next claims Moore did discuss problems concerning the facility doctor and "the Warden" expressed his frustration about Dr. Greby and the possibly of locking

27

her out of the facility. (Plain. Resp.,[495], p. 98, *citing* AMF #116).  However, Plaintiff

cites only to a portion of Moore's deposition which makes no mention of Defendant

Gossett and refers to time periods before he was the IRCC Warden. (Plain. Resp., [495],

AMF #116, *citing* Ex. 26, Moore Depo. p. 87-90).  In addition, Defendant Gossett testified

he did not know about any prior threats to lock Dr. Greby out of the facility. (Plain.

Resp., [495], Ex. 15, Goss Depo., p. 79; Ex. 16, Goss Depo., p 131, 134).  Defendant

Gossett also testified as Assistant Warden, he had no "direct oversight" over the

Healthcare Unit. (Def. Mot., [358], Ex A, Goss. Depo., p. 63).

Plaintiff further claims Nursing Director Greenhagen "met weekly" with

Defendant Gossett to discuss issues or complaints concerning Dr. Greby. (Plain. Resp.,

[495], p. 97, *citing* AMF #119).  However, Plaintiff cites to a portion of Greenhagen's

deposition which pertained to the time period up until April of 2013 and she did not

mention speaking to the Defendant. (Plain. Resp., [495], AMF #119 *citing* Ex. 23, Green

Depo., p. 64).  The only evidence before the Court indicates Defendant Gossett became

the IRCC Warden five months later in September of 2013.

In short, Plaintiff does not clearly cite to evidence demonstrating Defendant

Gossett had knowledge of any specific issues within either the healthcare unit or Dr.

Greby, nor that the Defendant knew the Plaintiff faced a substantial risk of harm. *See*

*Signature Transportation Group, LLC v. Jacobs*, 2020 WL 1663124, at *2 (N.D.Ill. April 3,

2020)("it simply is not the court's job to sift through the record to determine whether

there is sufficient undisputed evidence to support a party's claim or defense as a matter

of law."); *T.G. ex rel. T.G. v. Midland School Dist*. 7, 848 F.Supp.2d 902, 912 FN 4 (C.D.Ill.

Jan 27, 2012)("It is Plaintiffs' responsibility to clearly present their arguments, otherwise they run the risk that the Court will not unearth the intended truffle that might carry the day."); *Coffey v. Cox*, 218 F.Supp.2d 997, 999 FN 3 (C.D.Ill. Aug. 20,2002)("While (Plaintiff) is correct that, in ruling upon Defendants' motion for summary judgment, the Court must view the record as a whole and must draw all reasonable inferences in his favor, it is his responsibility to point the Court to where exactly in the record a genuine issue of material fact exists which would preclude the Court from entering summary judgment.").

Plaintiff instead speculates the Defendant Warden must have known based on his supervisory role, the possibility he might have participated in relevant meetings, or he might have received relevant emails, and testimony that "in the Department of Corrections, they're - - you know, everybody knows everything." (Plain. Resp., [495], Ex. 23, Green Depo., p. 64). This is insufficient to defeat summary judgment. *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) ("our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture.")(internal citation omitted); *Hall-Bey v Hanks*, 93 Fed.Appx 977, 980 (7th Cir. 2004)("conclusory statements cannot sustain a non-movant's burden on summary judgment."); *Stagman v Ryan*, 176 F.3d 986, 995(7th Cir. 1999)("statements that are the result of speculation or conjecture or merely conclusory" do not meet requirements of Rule 56).

The Court appreciates Plaintiff's complaint raises a very serious allegation. Plaintiff suffered acute renal failure while in IDOC custody.   Plaintiff's complaint identified several individuals who were directly involved and responsible for providing medical care, and Plaintiff previously reached a settlement agreement with all medical providers.

However, Plaintiff cannot ask the Court to hold non-medical Defendants to the same standard as individuals with both specific medical training and knowledge and direct responsibility for accessing Plaintiff's medical needs and providing medical care. Plaintiff has failed to demonstrate a disputed issue of fact suggesting Defendants Wise, Johnson, or Gossett were deliberately indifferent to his serious medical condition under any theory of liability.  The motion for summary judgment is GRANTED. [484].

IT IS THEREORE ORDERED Defendants' Gregory Gossett, Corey Wise, and Robbie Johnson's Motion for Summary Judgment is GRANTED pursuant to Federal Rule of Civil Procedure 56. [484]. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff.  This case is terminated.

Entered this 20th day of December 2022.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE